2006 UT App 514

**Jamie FRIES, Plaintiff and Appellee,**

v.

**Linda MARTIN, Defendant and Appellant.**

**No. 20050026–CA.**

Court of Appeals of Utah.

Dec. 29, 2006.

Mark R. Gaylord, Craig H. Howe, and Matthew L. Moncur, Ballard Spahr Andrews & Ingersoll, Salt Lake City, for Appellant.

Jeffrey Kitchen, Day Shell & Liljenquist, Murray, for Appellee.

Before BENCH, P.J., BILLINGS and ORME, JJ.

## OPINION

BILLINGS, Judge:

¶ 1 Defendant Linda Martin appeals from the trial court's grant of summary judgment to Plaintiff Jamie Fries. Specifically, Martin contests the trial court ruling that she could not have acquired by adverse possession a portion of a county alley (the Disputed Tract) that has been fenced as part of her property for more than forty years. In the alternative, Martin argues that the Disputed Tract should not have been awarded solely to Fries, the adjoining property owner, but rather should have been split equally between Martin and Fries, the two abutting landowners. *See* Utah Code Ann. § 72–5–105(2)(a) (Supp.2006). We affirm.

## BACKGROUND

¶ 2 Martin and Fries own neighboring homes in Magna, Utah (the Martin Property and the Fries Property). Separating the parties' properties is a county alley that is approximately 12 feet wide and 725 feet long. This alley was originally included in a large parcel of land owned by Manuel and Georgia Papanikolas. In 1916, Mr. and Mrs. Papanikolas created the Highland Subdivision and divided their property into individual lots. The Fries Property is located in the Highland Subdivision; the Martin Property is not. At the time Mr. and Mrs. Papanikolas created the Highland Subdivision, they also dedicated the alley to the public. However, the alley has been out of public use since at least the 1950s.[1]

---

1. Martin disputes that the public ever used the alley.

¶ 3 Over time, the property that was originally part of the alley was divided between the adjoining property owners. Fences maintained by the Martin Property owners and adjacent property owners began crossing, fractionalizing, and dividing the alley property. When the Martin Property owners fenced their property, they included the Disputed Tract so that an additional twelve feet was added to the rear of their property. These fence lines have been in place for at least forty years. Martin has been in exclusive possession and control of the Martin Property and the Disputed Tract for approximately seventeen years. She has also paid property taxes on these properties during that time.

¶ 4 On September 18, 2000, Salt Lake County (the County) formally vacated the alley by Ordinance Number 1467 (the Ordinance). *See* Salt Lake County, Utah, Ordinance 1467 (Sept. 18, 2002). The Salt Lake County tax assessor then added various portions of the alley to the abutting lot owners within the Highland Subdivision, including adding the Disputed Tract to the Fries Property. However, Martin refused to vacate the Disputed Tract, so Fries brought an action to quiet title to the Disputed Tract and subsequently moved for summary judgment. The trial court granted Fries's motion for summary judgment holding that Martin could not adversely possess the Disputed Tract against Salt Lake County. The trial court also ruled that since Fries's predecessors in interest had owned the entire alley and had platted all of it as part of the Highland Subdivision, Fries was the rightful owner of the Disputed Tract. Martin appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 5 On appeal, Martin first argues that the trial court erred when it granted Fries's motion for summary judgment and ruled that Martin could not have obtained ownership of the Disputed Tract through adverse possession. In the alternative, Martin argues that the property should not have been awarded solely to Fries, but rather should have been split equally between Martin and Fries, the two abutting landowners. *See* Utah Code Ann. § 72–5–105(2)(a). Under Utah Rule of Civil Procedure 56(c), summary judgment is only appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Utah R. Civ. P. 56(c). Therefore, "[w]hen determining the propriety of a trial court's grant of summary judgment, we review the trial court's legal conclusions for correctness, affording those legal conclusions no deference." *Newman v. Sonnenberg,* 2003 UT App 401, ¶ 5, 81 P.3d 808 (quotations and citations omitted).

## ANALYSIS

■ ¶ 6 Martin first argues that the trial court erred in holding that she could not obtain title to the Disputed Tract through adverse possession. To establish title to the Disputed Tract by adverse possession, Martin "has the burden of proving that possession was open, notorious, and hostile and that taxes were paid for the entire statutory period." *Marchant v. Park City,* 788 P.2d 520, 523–24 (Utah 1990) (footnotes omitted). According to the facts, as accepted by the trial court for purposes of summary judgment,[2] Martin meets these requirements.

■ ¶ 7 However, despite Martin's satisfaction of these requirements, she cannot adversely possess land "designated for public use." Utah Code Ann. § 78–12–13 (2002); *see also Averett v. Utah County Drainage Dist. No. 1,* 763 P.2d 428, 429–30 (Utah Ct. App.1988) ("Generally, property held by municipalities or other statutorily defined governmental entities cannot be acquired by adverse possession, at least insofar as the property is held for public use."); *Cassity v. Castagno,* 10 Utah 2d 16, 347 P.2d 834, 835 (1959) ("One may not adverse the sovereign."). Although Martin acknowledges this rule, she asserts that the rule does not apply because the Disputed Tract was not held for public use. *See Pioneer Inv. & Trust Co. v. Board of Educ.,* 35 Utah 1, 99 P. 150, 153 (1909) (holding that adverse possession doc-

---

2. In reviewing a trial court's order for summary judgment, "we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *DCM Inv. Corp. v. Pinecrest Inv. Co.,* 2001 UT 91, ¶ 6, 34 P.3d 785 (quotations and citation omitted).

trine and its corresponding statute of limitations applied to government property "not devoted to public use"); *see also Nyman v. Anchor Dev., L.L.C.,* 2003 UT 27, ¶¶ 10–11, 73 P.3d 357 (explaining that restrictions on adverse possession are limited "to situations in which the political subdivision has designated the land at issue for some public purpose"). Specifically, she claims that although Utah law limits adverse possession of public streets or ways, these limitations do not apply here because the alley was abandoned by the County and had not been held for public use, if ever, for more than fifty years.

¶ 8 But, under Utah law, the alley could not cease to be held for public use by mere abandonment or nonuse because real property designated as public use can only cease to be such by formal vacation. *See* Utah Code Ann. § 72–5–105; *Henderson v. Osguthorpe,* 657 P.2d 1268, 1269–70 (Utah 1982); *Ercanbrack v. Judd,* 524 P.2d 595, 596–97 (Utah 1974); *Clark v. Erekson,* 9 Utah 2d 212, 341 P.2d 424, 426 (1959) ("[A] public highway can only be abandoned by an order of the county commissioners or other competent authority."). "Section 72–5–105 plainly provides that a public highway remains a highway until the proper authorities order it 'abandoned or vacated.'" *Culbertson v. Board of County Comm'rs,* 2001 UT 108, ¶ 42, 44 P.3d 642. Section 72–5–105 "make[s] no allowance for any other type of abandonment or vacation." *State v. Harvey Real Estate,* 2002 UT 107, ¶ 17, 57 P.3d 1088; *see also Wasatch County v. Okelberry,* 2006 UT App 473, ¶ 26, 153 P.3d 756 ("The Utah Supreme Court has interpreted the language of [section 72–5–105] to require strict compliance with statutory procedures to effect an abandonment or vacation of a public road by the government.").

■ ¶ 9 The formal vacation rule applies regardless of whether property was actually used by the public or simply designated for public use in a particular dedication. In *Sowadzki v. Salt Lake County,* 36 Utah 127, 104 P. 111 (1909), the Utah Supreme Court specifically compared the abandonment of a public road that had been established by use and the abandonment of a public road that

had been established by dedication and found the distinction to be insignificant. *See id.* at 116. Therefore, property dedicated for public use is considered to be held for public use even if the county does not use it for that purpose, and the formal vacation rule applies. *See Henderson,* 657 P.2d at 1268, 1270 (holding that property designated for public use was subject to the formal vacation rule, even though the property was "never … developed as a road and remain[ed] essentially in its natural state, covered by trees and shrubs"). Because here the alley was dedicated for public use, the County could not abandon it simply by nonuse. The alley remained dedicated for public use, even though it was not being used as such, until the County enacted the Ordinance, wherein the alley was formally vacated.

■ ¶ 10 In addition to her argument that she could adversely possess the Disputed Tract because the County had abandoned the alley, Martin also argues that she could adversely possess the Disputed Tract because the County only had a defeasible fee interest, which was terminated when the alley ceased to be used by the public over forty years ago. Martin asserts that the nature of the dedication gave the County a defeasible fee interest subject to an affirmative requirement that it be for the "perpetual use of the public." A defeasible fee is "an estate in fee that is liable to be defeated by some future contingency." *Falula Farms, Inc. v. Ludlow,* 866 P.2d 569, 573 n. 6 (Utah Ct.App.1993). Martin relies on *Falula Farms,* asserting that when the alley ceased to be maintained for "perpetual use of the public," the County's fee interest was divested, and the County lost its interest in the alley. Therefore, Martin claims that if the County lost its interest in the alley when it ceased to be used by the public over forty years ago, then the alley reverted to the abutting land owners, she adversely possessed the Disputed Tract, and she now owns the Disputed Tract in its entirety.

■ ¶ 11 However, Martin misreads *Falula Farms.* The dedication of the property in *Falula Farms* was virtually identical to the dedication in this case—both state that the land was "for perpetual public use." *Id.* at

570. The County's fee interest in *Falula Farms* was divested, and the condition subsequent occurred with the "action by the County to vacate part of the road." *Id.* at 573 n. 6. Similarly, in this case, the condition subsequent did not occur until the "action by the county," when it enacted the Ordinance formally vacating the alley. The County did not lose its interest forty years ago when the alley ceased being used for the public. Therefore, the County maintained its interest in the alley until 2000 and Martin could not have obtained title to the Disputed Tract through adverse possession.

¶ 12 Second, and in the alternative, Martin argues that the trial court erred in ruling that Fries became the sole owner of the alley as a result of the County's abandonment. According to the Ordinance, "all right, title and interest in and to the portion of said alley being vacated is to revert *by operation of law* to the abutting property owner or owners." Salt Lake County, Utah., Ordinance 1467 (Sept. 18, 2000) (emphasis added). Utah statutory law provides that title to vacated property vests in the adjoining owners, with half the property assessed to each of the adjoining owners. *See* Utah Code Ann. § 72–5–105(2)(a). However, section 72–5–105 also states that "should a description of an owner of record extend into the vacated or abandoned highway, street, or road that portion . . . shall vest in the record owner." *Id.* § 72–5–105(2)(b).

¶ 13 While the statute fails to define "[o]wner of record," the Utah Supreme Court has defined it as "a legal term that denotes a 'property owner in whose name the title appears in the public records.'" *State v. Tooele County*, 2002 UT 8, ¶ 19, 44 P.3d 680 (quoting *Black's Law Dictionary* 1131 (7th ed.1999)). Here, the record owners of the alley are Mr. and Mrs. Papanikolas—the dedicators of the alley. However, there is no distinction, in terms of a reversionary interest, between a grantor of the dedication and his or her valid successors of record title. *See Condas v. Willesen*, 674 P.2d 115, 115 (Utah 1983) ("[S]ince [property owners'] predecessors in interest originally dedicated all of the property for [a public street], the County's revocation of acceptance result[ed] in a reversion of the entire strip to [those property owners]"). Therefore, a reversionary interest returns title to the record owner—the original grantor of the real property. In this case, the alley returns to the dedicators—Mr. and Mrs. Papanikolas, or to their successor in title—Fries. If both, or neither, of the parties were the dedicators' successors in title, then Martin would be correct that section 72–5–105(2)(a) requires that each receive one half of the property. *See* Utah Code Ann. § 72–5–105(2)(a). However, that is not the present case.

## CONCLUSION

¶ 14 Therefore, we affirm the trial court's order of summary judgment.

¶ 15 I CONCUR: RUSSELL W. BENCH, Presiding Judge.

¶ 16 I DISSENT: GREGORY K. ORME, Judge.